U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2010 APR 14 PM 4:54

BY _____
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| VANESSA ALLEN-SLEEPER ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | DOCKET NO.: 5:09-cv-151-cr |
| ) | |
| FEDERAL EXPRESS CORP. d/b/a ) | |
| FEDEX EXPRESS, and FEDEX CORP. ) | |
| ) | |
| Defendants. | |

## OPINION AND ORDER GRANTING
## DEFENDANT FEDEX CORP.'S MOTION TO DISMISS

This matter came before the court on February 10, 2010 for a hearing on Defendant FedEx Corp.'s Motion to Dismiss. Plaintiff, Vanessa Allen-Sleeper ("Plaintiff") is represented by Shannon A. Bertrand, Esq. and Michael A. Stahler, Esq. Defendants, Federal Express Corp. d/b/a FedEx Express ("Federal Express") and FedEx Corp. ("FedEx Corp.") are represented by John A. Serafino, Esq. The parties' post-hearing filings were completed on March 4, 2010.

Plaintiff's two-count Complaint alleges negligence based upon respondeat superior and negligent hiring and supervision. Plaintiff asserts that she was struck by a truck bearing "FedEx" markings in Puerto Vallarta, Mexico while she was walking across a four-lane roadway. Both Federal Express and FedEx Corp. are named defendants in each count of the Complaint.

Pursuant to Fed.R.Civ.P. 12(b)(2), FedEx Corp. moves to dismiss Plaintiff's Complaint for lack of personal jurisdiction. It asserts that it does not have sufficient "minimum contacts" with the State of Vermont to support this court's exercise of general jurisdiction over it.

## I. Jurisdictional Facts.

After discovery, the parties have established the following jurisdictional facts.[1] FedEx Corp. is a Delaware corporation that is listed on the New York Stock Exchange and identified as a "Fortune 500" company. It is the sole parent of co-defendant Federal Express which is a Delaware corporation registered as a foreign corporation with the Vermont Secretary of State. Federal Express operates at least three staffed ship centers in Vermont and owns and uses the trademark on the "FedEx" logo there.

In addition to Federal Express, FedEx Corp. is the parent corporation of three other "business units", FedEx Freight, FedEx Services, and FedEx Ground Package Systems, Inc., which are all registered as foreign corporations with the Vermont Secretary of State and which operate under the FedEx logo. FedEx Corp. provides a broad portfolio of transportation, e-commerce, and business services through a portfolio of operating companies. FedEx Custom Critical, Inc. and FedEx National LTL, Inc. are also registered as foreign corporations with the Vermont Secretary of State. Their relationship with FedEx Corp. is not specified.

The business units are "managed collaboratively" by FedEx Corp. such that all companies benefit from each other. FedEx Corp. provides strategic direction to, and coordination of, the entire FedEx portfolio of companies, including Federal Express. FedEx Corp. does not, however, control the day-to-day operations of Federal Express in Vermont.

FedEx Corp. is not incorporated in Vermont, and does not have a certificate of authority to transact business in the state as a foreign corporation. It does not have a registered agent for service of process in Vermont, and has never paid taxes in Vermont. It has never maintained an office, employees, or bank accounts in Vermont, and has no assets, investments, or security interests there. It has never derived substantial revenue

---

[1] Since the court's hearing, the parties have resolved their discovery dispute regarding certain jurisdictional discovery sought by the Plaintiff. Plaintiff, however, has not supplemented the facts with any additional information.

from Vermont.

FedEx Corp. has never owned, rented or leased any property in Vermont. It does not own, operate or manage any staffed ship centers in the state, any "drop boxes," or any other places where consumers can access its services. It does not own, operate, or manage any trucks or planes in Vermont. It has not sold any goods or services in Vermont, and has not engaged in any advertising or promotional activity there. FedEx Corp. has never previously been a defendant, or a plaintiff, in any lawsuit in Vermont.

In 2009, Federal Express had eight directors–one of whom was also a director of FedEx Corp. This ratio was the same for 2008 and 2007. In 2009, Federal Express had 113 officers–twelve of whom were officers of FedEx Corp. In 2008, this ratio was 113 to 13. In 2007, it was 115 to 14.

FedEx Corp. has entered into a contractual relationship with a Vermont law firm. The nature, extent and duration of this contract have not been described to the court.

Plaintiff's presence in Mexico at the time of the accident was unrelated to any of the Defendants' activities in Vermont. Witnesses to the accident and evidence regarding the immediate care rendered to Plaintiff are in Mexico. Additional witnesses, including witnesses who provided extensive medical care to Plaintiff, are located in Vermont.

## II. Conclusions of Law.

Pursuant to Fed.R.Civ.P. 12(b)(2), FedEx Corp. seeks dismissal of the claims against it, asserting that this court does not have personal jurisdiction over it. "On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). "After discovery, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990), *cert. denied*, 498 U.S. 854 (1990) (citations omitted). "In the absence of an evidentiary hearing on the jurisdictional allegations, or a trial on the merits,

3

all pleadings and affidavits are construed in the light most favorable to the plaintiff," and all inferences are drawn in the plaintiff's favor. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985).

To determine whether this court may exercise personal jurisdiction over FedEx Corp., "the court must look first to the long-arm statute of the forum state, in this instance, [Vermont]." *Benusan Restaurant Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997) (citing *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997)). "If the exercise of jurisdiction is appropriate under that statute, the court then must decide whether such exercise comports with the requisites of due process." *King*, 126 F.3d at 27.

"Vermont's long-arm statute, 12 V.S.A. § 913(b), confers jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause." *Dall v. Kaylor*, 163 Vt. 274, 275 (1995). Accordingly, the court need only examine "whether the exercise of [general] jurisdiction comports with federal due process. To do so, [it] undertake[s] an analysis consisting of two components: the 'minimum contacts' test and the 'reasonableness' inquiry." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002); *see also Dall*, 163 Vt. at 275.

> The first of these tests asks whether the defendant "has 'certain minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 152 (2d Cir. 2001) (quoting *Calder v. Jones*, 465 U.S. 783, 788 [ ] (1984)) (alteration in original; some internal quotation marks omitted). . . . A state may assert "general jurisdiction"-- i.e., jurisdiction irrespective of whether the claim arises from or relates to the defendant's forum contacts–only where these contacts are "continuous and systematic." *U.S. Titan*, 241 F.3d at 152; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 [ ] (1984).
>
> * * *
>
> The second part of the jurisdictional analysis asks "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'"–that is, whether it is reasonable under the circumstances of the particular case. *Metro. Life [Ins. Co. v. Robertson-*

*Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)] (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 [ ] (1945)).

*Bank Brussels Lambert*, 305 F.3d at 127, 129 (footnote omitted).

### A. *Whether Plaintiff has Established FedEx Corp.'s "Minimum Contacts"*

The most compelling fact Plaintiff cites to support her claim of "minimum contacts" is that FedEx Corp. provides strategic direction to and coordination of several subsidiaries, including Federal Express, that are doing business in Vermont. As an additional contact, Plaintiff cites FedEx Corp.'s contract with a Vermont law firm.

In analyzing whether FedEx Corp.'s contacts with Vermont are sufficient to constitute "minimum contacts," the court must reject the proposition that "total ownership and resulting control of a corporation subject to state jurisdiction, by another corporation, carries with it amenability to long-arm statutes, on an Alter ego theory." *Pasquale v. Genovese*, 136 Vt. 417, 420 (1978). Instead, Vermont has adopted "[t]he better view" that:

> . . . for the purpose of determining amenability to jurisdiction of a foreign corporation which happens to own a subsidiary corporation carrying on local activities, [a court should] inquire whether the parent has the requisite minimum contacts with the State of the forum. Thus the ownership of the subsidiary carrying on local activities [in Vermont] represents merely one contact or factor to be considered in assessing the existence or non-existence of the requisite minimum contacts with the State of [Vermont], but is not sufficient of itself to hold the present foreign corporation amenable to personal jurisdiction.

*Id.* at 420-21 (citation and footnote omitted). This approach is consistent with that taken by other courts which hold that the mere presence of a subsidiary in the forum and a parent's resulting control over that subsidiary is insufficient, without more, to provide the basis for general jurisdiction.[2]

---

[2] *See, e.g., Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988) (a subsidiary's activities in the forum "are not necessarily enough to render a parent subject to a court's jurisdiction or otherwise."); *Bauman v. DaimlerChrysler Corp.*, 579 F.3d 1088, 1094 (9th Cir. 2009) ("The existence of a relationship between a parent company and its subsidiaries,

Having found one contact between FedEx Corp. and Vermont, the court must turn to whether there are any other contacts that could give rise to a finding of "minimum contacts."

The existence of a contract between FedEx Corp. and a Vermont business, without more, is almost never the basis for general jurisdiction.³ Although the court has few details regarding the contract in question, it is safe to assume it involves the provision and receipt of law firm services. Such a contract does not generally create continuing obligations with the forum state, nor does it give rise to the conduct of business there. *See Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) ("evaluation of the jurisdictional significance of a defendant's contract or other business of the forum is not rigid or formalistic, but rather practical and pragmatic.").

The court must also evaluate FedEx Corp.'s law firm contract and the presence of its subsidiaries in the forum in the context of other jurisdictional facts. FedEx Corp. has no offices, employees, assets, investments, bank accounts, or property interests in Vermont. It is not registered to business in Vermont and does not have an agent to accept service of process there. It does not pay taxes to Vermont and does not have planes or trucks that use Vermont's roadways. It neither advertises nor solicits business in

---

however, is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum." Moreover, "[a] parent may be directly involved in the activities of its subsidiaries . . . so long as that involvement is consistent with the parent's investor status."); *Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008) ("Before a party may obtain personal jurisdiction over a parent company, the plaintiff must show that the parent dominates and controls the subsidiary; mere ownership of subsidiary is insufficient to justify personal jurisdiction."); *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 300 (3rd Cir. 2008) ("To obtain general jurisdiction over [a parent corporation] in [the forum] state based upon [the subsidiary's] contacts, [plaintiff] would need to show that [the parent] controls [the subsidiary.]"); *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1363 (11th Cir. 2006) ("When reviewing general jurisdiction for purposes of the Due Process Clause, we have held that the plaintiff must set forth how the 'subsidiary's existence was simply a formality, and that the affiliated corporation was merely the non-resident's agent.'").

³ *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contact with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) (citation omitted) ("merely contracting with a resident of the forum state does not establish minimum contacts.").

Vermont, and has not sold any goods or services there. It has neither pursued nor defended against any other lawsuit in Vermont. It does not derive substantial revenues from the forum.

"[F]or purposes of conferring general jurisdiction, a nonresident defendant must actively pursue business connections in the forum." *Bechard v. Constanzo*, 810 F. Supp. 579, 585 (D.Vt. 1992). The facts, even when viewed in the light most favorable to the Plaintiff, do not establish FedEx Corp.'s "continuous," "systematic," and "substantial" activities in Vermont such that, having enjoyed the benefits of conducting business in Vermont, FedEx Corp. should bear the corresponding burden of submitting to Vermont's courts. *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 317-19 (1945); *see also Havill v. Woodstock Soapstone Co.*, 172 Vt. 625, 626 (2001) (citation omitted) ("the critical consideration is 'whether the defendant's conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there.'").

### B. Whether the Corporate Veil Should be Pierced

Plaintiff seeks to demonstrate "minimum contacts" through a "secondary" argument. She asks this court to pierce the corporate veil and hold FedEx Corp. responsible for the contacts of its subsidiary, Federal Express, in Vermont. Under Vermont law, "[t]he court will . . . pierce the corporate veil, where the corporate form has been used to perpetrate a fraud, . . . and also where the needs of justice dictate." *Agway, Inc. v. Brooks*, 173 Vt. 259, 262 (2001). "In cases not involving fraudulent activity, the court will look to the facts and circumstances of each case to determine whether the corporate veil should be pierced in the interests of fairness, equity, and the public need." *Id.* at 263. Accordingly, the corporate veil may be pierced where a corporation does not observe corporate formalities, and is "without assets, capital, or purpose beyond evading contract liability . . . [and] legitimate claims of judgment creditors." *Id.* at 264.

FedEx Corp. does not manage the day-to-day activities of Federal Express. There is not complete, or even substantial, overlap between the two corporations' directors and officers. There is no evidence that either corporation fails to observe corporate

formalities, or that Federal Express is a mere shell corporation in Vermont, existing for the sole purpose of carrying out FedEx Corp.'s directives, evading creditors, or perpetuating a fraud. In the absence of such evidence, Plaintiff has failed to shoulder her heavy burden of establishing that the corporate veil should be pierced. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("The doctrine of piercing the corporate veil, however, is a rare exception, applied in the case of fraud or certain other exceptional circumstances[.]"). The court will thus not find "minimum contacts" on a veil-piercing basis.

Examining the "contacts" Plaintiff has established in the light most favorable to her, the court cannot conclude that she has shown that FedEx Corp. took affirmative steps to avail itself of the ability to conduct business in Vermont. *See Pasquale*, 136 Vt. at 421 ("'Intentional and affirmative action' by the non-resident defendant . . . remains the key to personal jurisdiction. . . ."); *see also Burger King Corp.*, 471 U.S. at 475 ("minimum contacts" must involve some "purposeful availment 'of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"). Accordingly, the court's inquiry must end: "A reviewing court must first examine the defendant's contacts with the forum. *If the same do not exist in sufficient abundance, that is, if the constitutionally necessary first-tier minimum is lacking, the inquiry ends.*" *Metropolitan Life Ins. Co.*, 84 F.3d at 569 (emphasis supplied) (quoting *Donatelli v. National Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990)); *see also Boschetto*, 539 F.3d at 1015 ("if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed.").

## C. *Whether the Exercise of General Jurisdiction is "Reasonable"*

Notwithstanding its finding of insufficient "minimum contacts," the court examines the "reasonableness" prong of the Due Process inquiry in order to facilitate appellate review.

> Courts are to consider five factors in evaluating reasonableness: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5)

the shared interest in the states in furthering substantive social policies." *Bank Brussels Lambert*, 305 F.3d at 129 (citations omitted).

In this case, the court finds that an exercise of jurisdiction will not impose an undue burden on FedEx Corp.--a corporate entity with Vermont counsel and subsidiaries in the state. Although perhaps inconvenient, an exercise of jurisdiction is unlikely to substantially impact its ability to protect FedEx Corp.'s rights and interests.

Vermont has some interest in adjudicating a case involving injuries to the Plaintiff, one of its residents, although this interest is reduced by the fact that the injury did not occur in or near Vermont, or even in this country. As a result, Vermont's more general interests in protecting the safety of pedestrians and overseeing the safe operations of motor vehicles on its roadways are not at stake here.

The court next examines the interstate judicial system's interest in obtaining the most efficient resolution of the controversy. In analyzing this factor, the courts "generally consider where evidence and witnesses are likely to be located." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 245 (2d Cir. 1999) (quotation omitted). Mexico is the jurisdiction in which the accident arose and its law is likely to govern the outcome of this dispute. *See McKinnon v. F.H. Morgan & Co., Inc.*, 170 Vt. 422, 424 (2000) (applying "most significant relationship test" and finding that generally "the law of the [forum] where the injury occurred determines the rights and liabilities of the parties."). Many of the potential witnesses and much of the evidence is located in Mexico. However, the Plaintiff, another witness, and Plaintiff's physicians are located in Vermont. At this juncture, Mexico and Vermont appear to offer roughly equal efficiencies in resolving this controversy.

Finally, an exercise of jurisdiction will not advance the states' shared interest in furthering substantive social policies. Although Vermont has a greater interest in this case than any other state, its interest is not a compelling one and does not involve the furtherance of any "substantive social policies."

Examining all of the reasonableness factors collectively, the court concludes that Vermont's relatively limited interest in this litigation is insufficient to support the

exercise of jurisdiction over a foreign corporation that has insufficient contacts with the state. As a result, even had the court found a weak showing of "minimum contacts," it does not further find a strong showing of "reasonableness" sufficient to justify an exercise of general jurisdiction. *See Bank Brussels Lambert*, 305 F.3d at 129 ("The import of the 'reasonableness' inquiry varies inversely with the strength of the 'minimum contacts' showing–a strong (or weak) showing by the plaintiff on 'minimum contacts' reduces (or increases) the weight given to 'reasonableness.'").

For the reasons stated above, Defendant FedEx Corp.'s Motion to Dismiss is hereby GRANTED and the action is hereby DISMISSED as to FedEx Corp.
SO ORDERED.

DATED at Burlington, Vermont this 14th day of April 2010.

Christina Reiss
United States District Court Judge